**UNION MORTGAGEE CORPORATION,
Plaintiff,**

v.

**Richard L. ROUDEBUSH, Administrator
of Veterans Affairs, and the United
States of America, Defendants.**

**No. 77 C 1785.**

United States District Court,
E. D. New York.

May 3, 1979.

Bernard Hall, Freeport, N.Y., for plaintiff.

Edward R. Korman, U. S. Atty., E.D.N.Y. by Diane R. Eisner, Robert L. Begleiter, Asst. U. S. Attys. Brooklyn, N.Y., for defendants.

## DECISION AFTER NON–JURY TRIAL

PRATT, District Judge:

Trial of this non-jury case was held on April 16, 1979. The following constitute the court's findings and conclusions.

In 1971, plaintiff, a mortgage servicing and placement firm, granted a $27,500 mortgage to Louis Frangella and Katherine Frangella. The Veterans Administration (VA) issued to plaintiff its Certificate of Commitment, No. LHG 484114, evidencing its guaranty of the mortgage. After plaintiff had assigned the mortgage to a local savings bank, the mortgagors defaulted on their payments causing the assignee to foreclose. As a result of the foreclosure proceedings, the VA paid approximately $5,000 to the assignee, and acquired title to the property which it subsequently sold. In the process, the VA incurred additional expenses for taxes, repairs, and brokerage fees so that the total amount lost by the VA as a result of the mortgage default was $6,754.70.

Some time later, after investigation, the VA determined that the mortgage application which had been submitted by plaintiff had contained misrepresentations as to the applicant's employment, income, and moneys on deposit. By letter dated August 20, 1976, the VA notified plaintiff of the misrepresentations, stating

> if the true facts were known, the veteran would not have qualified as an acceptable credit risk for the loan and the Veterans Administration would not have issued guaranty. As a result of this material misrepresentation, we have concluded that the Administrator has been relieved of all liability under the guaranty with respect to the loan under Regulation 4325(A)(1)." Ex. 7.

The letter then made a demand upon plaintiff as the originating lender for the amount of the loss which, as of August 20, 1976, was $6,692 and which bore interest at a per diem rate thereafter for $1.14 calculated at 7% per annum. Plaintiff did not reimburse the VA for the amount demanded. On October 14, 1976, the VA notified

plaintiff by plaintiff's Exhibit 8 that it was offsetting the amount then owed, $6,754.70, against monies owed by the VA to plaintiff on another transaction. Plaintiff then brought this suit to recover back the amount offset.

Defendants claim that plaintiff was liable to the VA for the amount of the loss because under the applicable regulations, the misrepresentations as to the veteran's employment, salary, and bank deposit permit recovery of the resulting loss from the plaintiff as original lender. Defendants rely specifically upon 38 CFR § 36.4325, which, with respect to VA loans, provides in part:

(a)

(1) * * * any willful and material representation * * * by the lender, or by a holder, or the agent of either, in procuring the guaranty * * *, shall relieve the Administrator of liability, or, * * * shall constitute a defense against liability on account of the guaranty * * *.

(c) If after the payment of a guaranty * * * the * * * misrepresentation * * * is discovered and the Administrator determines that an increased loss to the government resulted therefrom the transferror * * * shall be liable to the Administrator for the amount of the loss caused by such misrepresentation * * *.

It is clear that willful and material misrepresentations were made in the application and were submitted by plaintiff to the VA. The application for home loan guaranty, Exhibit A, lists the occupation of the applicant, Louis Frangella, as "store manager" and "Al's Fruit & Veg. Market". It states he has been employed four years and his gross pay is $1,208. On the evidence presented, it is clear that the named employer is the applicant's father Albert Frangella, who testified that his son Louis had never been employed in his fruit and vegetable market, that the only regular employees were himself and his wife, and that he had never paid $1200 per month to Louis. Louis Frangella himself also testified that

the information was false; he also testified that the signature on Exhibit A, the application for home loan guaranty, was not his signature.

Also submitted to the VA in support of the application was a verification of employment form indicating the same employer for the same period of time in the same position, and for the same salary. At the bottom it bears a verification by "Alice Struthers" who is designated as "bookkeeper". Albert Frangella testified he never had a bookkeeper and that he knew of no Alice Struthers.

As to the bank deposit, the application had indicated $2,000 on deposit in the Franklin National Bank branch at 260 East Pulaski Road, Greenlawn, New York. Plaintiff filed with the VA a form showing that the deposit was verified by "J. Sullivan" who was listed as "Mgr.". Ex. 4. Testimony by an officer of European-American Bank, who had been manager of the Franklin National Bank branch indicated in the submitted application, made clear that there was no J. Sullivan employed at that bank in 1971 as manager or in any other capacity. Plaintiff's president testified that the practice of plaintiff's office was to send verification of deposit forms directly to the bank and have them returned directly to plaintiff for submission to the VA. Louis Frangella testified that he had no bank account at Franklin National Bank or in any other bank at the times in question.

While there is some doubt as to whether the false information about the bank account when compared with the actual amount of cash available to Frangella at the time of closing, a difference of approximately $700, would have affected the VA's decision in granting the mortgage, it is clear that if the VA had known that Louis Frangella's annual salary was only $10,000 as opposed to the $14,500 represented in the application and in the verification of employment form, the mortgage would never have been guaranteed by the VA.

It is apparent to the court that

1. Misrepresentations were made to the VA by an agent of plaintiff in connection with the subject application for guaranty.

2. The misrepresentations were wilfull, not accidental, and they were material to the decision made by the VA in issuing the certificate of guaranty.

3. The misrepresentations were discovered after payment to the assignee bank under the guaranty.

4. The administrator determined correctly that an increased loss to the government resulted from the misrepresentation.

By virtue of the foregoing, it appears that subdivision (c) of 36.4325 of the regulations applies, and that plaintiff as the "transferror" of the mortgage was, therefore, liable to the administrator for the amount of the loss, $6,754.70, which was offset against other monies owing to the plaintiff.

The court is aware that the regulation places a heavy burden upon a lender such as plaintiff, by making it liable for a material, wilful misrepresentation even in the absence of any subjective fault on the part of plaintiff's management. It is clear from the evidence in this case, however, that whoever else may have cooperated in submitting false information to the VA on this application, the entire misrepresented picture could not have been presented to the VA without the wilful complicity of at least one of plaintiff's employees. In determining where the loss resulting from wilful misrepresentations should fall, it is both reasonable and equitable that it should fall upon those persons who, more effectively than the government agency, can police the honesty and integrity of their own employees and more readily determine the reliability of the information submitted to the government.

Accordingly, judgment shall be entered by the clerk dismissing the complaint.

SO ORDERED.